# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MICHAEL E. SHEIMAN,
          Appellant,

     v.

DEPARTMENT OF THE TREASURY,
          Agency.

DOCKET NUMBER
SF-0752-15-0372-I-2

DATE: May 24, 2022

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Ryan Green</u>, Washington, D.C., for the appellant.

<u>Mikel C. Deimler</u>, Esquire, San Francisco, California, for the agency.

### BEFORE

Raymond A. Limon, Vice Chair
Tristan L. Leavitt, Member

### FINAL ORDER

¶1      The agency has filed a petition for review and the appellant has filed a cross petition for review of the initial decision, which mitigated the appellant's removal to a 30-day suspension. For the reasons discussed below, we GRANT the petition for review, DENY the cross petition for review, REVERSE the initial decision, and SUSTAIN the appellant's removal.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

¶2      The agency received an anonymous letter dated September 16, 2011, alleging that the appellant, a GS-13 Senior Appraiser for the agency's Internal Revenue Service (IRS) in Honolulu, Hawaii, was abusing his work time by, among other things, "golfing in the early afternoons during the work week." *Sheiman v. Department of the Treasury*, MSPB Docket No. SF-0752-15-0372-I-1, Initial Appeal File (IAF), Tab 10 at 13-14. From September 26, 2011, to February 18, 2014, the Treasury Inspector General for Tax Administration (TIGTA) conducted an investigation which purportedly found that between August 2006, and August 2013, the appellant "golfed during official IRS duty hours on at least 205 days for which he claimed no annual leave on his official IRS timesheets." *Id.* at 4. The investigative report also showed that out of those 205 days, the appellant claimed sick leave on 30 days, was on official travel for 5 days, and either he or his vehicle were observed at various Hawaii golf courses during official duty hours on 4 days. *Id.*

¶3      The agency issued an October 24, 2014 notice proposing the appellant's removal on 2 charges comprising 168 specifications of providing false information regarding his official time and attendance records, and 29 specifications of providing misleading information regarding his official time and attendance records. IAF, Tab 9 at 120-36. Under each specification of the first charge, the agency contended that the appellant had golfed during duty hours but did not take leave. *Id.* at 120-33. Under each specification of the second charge, the agency alleged that the appellant had played golf on a day that he took sick leave and had failed to use that leave for the purpose intended. *Id.* at 133-36. The appellant made a written reply to the notice in which he asserted that despite the fact that he may have played golf on any particular workday, he had a flexible schedule and always worked an 8-hour day, such that he did not intentionally provide false or misleading information regarding his official time and attendance records. IAF, Tab 24 at 45-51. After considering the evidence and the

appellant's written response, the agency issued a decision sustaining all the specifications and charges and removing the appellant effective February 6, 2015. IAF, Tab 7 at 31-35. The appellant elected to retire effective February 5, 2015.[2] *Id.* at 29.

¶4    The appellant appealed his removal. IAF, Tab 1. After holding a 2-day hearing, the administrative judge found that the agency failed to prove the first charge, sustained the second charge, rejected the appellant's affirmative defenses, and mitigated the removal to a 30-day suspension. *Sheiman v. Department of the Treasury*, MSPB Docket No. SF-0752-15-0372-I-2, Refiled Appeal File (RAF), Tab 19, Initial Decision (ID).

¶5    The administrative judge found that the agency failed to establish its first charge, providing false information regarding time and attendance records, determining after an exhaustive review of each specification that the agency failed to demonstrate that the appellant had the intent to defraud or deceive necessary to prove a falsification charge. ID at 12-13. She found that the agency's hearsay evidence, obtained from the Golf Handicap and Information Network (GHIN) website, was insufficient to prove that the appellant golfed during duty hours because GHIN was "not designed for the purpose of keeping an accurate record of golf tee times and dates," and was inconsistent with other agency evidence. ID at 6-7.

¶6    More importantly, the administrative judge found that the appellant's consistent explanation of his understanding that he had the discretion to fashion his own schedule as long as he worked for 8 hours per day and 40 hours per week was not inherently improbable. ID at 12. She also found that his understanding was consistent with the agency's time reporting system, which only required him

---

[2] If an employee elects to retire after receiving a removal decision, the Board retains jurisdiction over the removal action, regardless of the effective retirement date. 5 U.S.C. § 7701(j); *Mays v. Department of Transportation*, 27 F.3d 1577, 1579-81 (Fed. Cir. 1994).

to record the total hours for each day and not his starting or ending time. *Id.* She found that the appellant's testimony before her was sincere, straightforward and believable, as compared to the equivocal testimony of the agency's witnesses. ID at 12-13. Thus, she found the appellant understood that he was allowed to work a flexible schedule based on his duties and assignments, most of which occurred in the field and not in the office due to his work as an appraiser. *Id.* The administrative judge also found that the appellant's testimony about his work hours was corroborated by the testimony of one of his colleagues, who also began his workdays early and reported observing the appellant in the office as early as 5:00 a.m. ID at 13; Hearing Transcript, October 2, 2015 (Tr. 2) at 21-23 (testimony of the appellant's colleague).

¶7    The administrative judge sustained the second charge, which she interpreted as akin to a lack of candor, thus requiring a lesser showing of intent than falsification. ID at 14-15. She sustained 8 out of the 29 specifications of providing misleading information regarding official time and attendance records, finding that the appellant requested and took sick leave on 8 days when he was neither seeking medical treatment nor incapacitated from work and that he knew or should have known that paid sick leave is for illness or medical treatment, not for engaging in recreational activity. ID at 18-19. For each of the remaining specifications in the second charge, the administrative judge either found that the agency failed to show that the appellant played golf on that day or determined that because he had taken 4 hours or less of sick leave, and the agency could not establish the actual time that he played, it was not unlikely that the appellant attended a medical appointment and then played golf later in the same day. ID at 15-16.

¶8    The administrative judge found that the appellant failed to prove his due process defenses because the ex parte communications at issue were not likely to result in undue pressure on the deciding official, and the appellant also failed to meet the significant burden necessary to demonstrate that the deciding official

was biased. ID at 19-22. The administrative judge also found that the appellant failed to prove his harmful error defense because he did not show that any procedural error likely caused the agency to reach a conclusion different from the one it would have reached absent the error.[3] ID at 22.

¶9 Although the administrative judge found that the agency established a nexus between the appellant's misconduct and the efficiency of the service, she nevertheless mitigated the penalty to a 30-day suspension, finding that removal was outside the tolerable limits of reasonableness. ID at 23-25. She reasoned that, despite the loss of trust and the potential for notoriety that the agency cited in support of its choice of penalty, there were strong mitigating factors present, including the appellant's 9 years of discipline-free Federal service and his rehabilitative potential, as demonstrated by his remorsefulness and his consistent compliance with time and attendance practices since his first TIGTA interview on the subject in February 2014. ID at 24.

¶10 In its petition for review, the agency argues that it proved the first charge. Petition for Review (PFR) File, Tab 3 at 10. It contends that the administrative judge gave the evidence from GHIN insufficient weight, arguing that it is not hearsay but instead represents an exception to the hearsay rules as an admission against interest. *Id.* at 10-13. Alternatively, the agency argues that even if the GHIN evidence is hearsay, it is entitled to significant weight and reliably demonstrates that the appellant played golf on the dates he entered information into GHIN. *Id.* at 13-14. The agency further argues that the totality of the circumstances demonstrated that the appellant's actions were deliberate and not a mistake, showing the intent required to establish the first charge. *Id.* at 16-21.

---

[3] The parties do not contest the administrative judge's findings on the appellant's due process and harmful error defenses. Therefore, we decline to revisit them on review. *See Roche v. Department of Transportation*, 110 M.S.P.R. 286, ¶ 13 (2008) (explaining that the Board generally does not consider issues that are not raised on review), *aff'd*, 596 F3d 1375 (Fed. Cir. 2010); 5 C.F.R. § 1201.115 ("The Board normally will consider only issues raised in a timely-filed petition or cross-petition for review.").

The agency also defends the choice of removal as within its reasonable discretion, arguing that the appellant was only remorseful after TIGTA discovered his misconduct. *Id.* at 22-23. It contends that the administrative judge placed too much reliance on the appellant's performance and assigned insufficient weight to the loss of his supervisors' trust and confidence. *Id.* at 23-24.

¶11 The appellant responds in opposition to the agency's petition for review and submits a cross petition for review in which he argues that the administrative judge erred in sustaining the second charge. PFR File, Tab 5. The appellant also argues that the administrative judge erred in finding that he knew that his use of sick leave to play golf was improper and that he sought to deceive the agency when he submitted time and attendance information. *Id.* at 16-18. Following the October 1-2, 2015 hearing, the appellant filed motions regarding efforts by the agency to collect debts totaling $33,105.83, including fees, interest, and penalties. RAF, Tabs 13, 17. In his cross petition for review, the appellant argues that the administrative judge abused her discretion by not addressing the debt issue, and contends that the issue was ripe for adjudication. PFR File, Tab 5 at 18-23.

¶12 The agency has submitted a reply to the appellant's response to the petition for review, and a response in opposition to the appellant's cross petition for review. PFR File, Tabs 6-7.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The administrative judge properly concluded that the agency failed to prove the falsification charge because it did not show that the appellant acted with the requisite intent.</u>

¶13 To establish a charge of falsification, the agency must prove by preponderant evidence that the appellant knowingly supplied incorrect information and that he did so with the intention of defrauding the agency. *E.g.*, *O'Lague v. Department of Veterans Affairs*, 123 M.S.P.R. 340, ¶ 6 (2016), *aff'd per curiam*, 698 F. App'x 1034 (Fed. Cir. 2017); *Boo v. Department of Homeland Security*, 122 M.S.P.R. 100, ¶ 12 (2014). For the reasons explained below,

we agree with the administrative judge that the agency failed to prove that the appellant intended to deceive or defraud the Government when he completed his time and attendance records. ID at 13-14.

¶14    The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Based on the testimony before her, the administrative judge found the appellant's explanation of his time and attendance practices was plausible and credible. ID at 14. By contrast, she found the testimony of the agency's witnesses regarding the appellant's tour of duty and the flexibility afforded him was equivocal, and supported the appellant's understanding that it was acceptable for him to work a flexible schedule based on his duties and assignments. ID at 13. She also found that the appellant's supervisors consistently accepted his time and attendance submissions, even when they knew that he obviously was working more than 8 hours on occasion. ID at 12-13. For example, when the appellant was on travel, he did not record his extra time, and his first-level supervisor would permit him to use unofficial credit hours, essentially ratifying this practice. *Id.*

¶15    The agency identifies no sufficiently sound reasons to disturb the administrative judge's demeanor-based conclusion that the appellant did not intend to defraud or deceive the Government when he completed his time and attendance records. *Id.* Thus, we agree with the administrative judge that the agency failed to prove its first charge.

The administrative judge gave the GHIN evidence proper weight.

¶16    On review, as noted above, the agency challenges the administrative judge's finding that the GHIN evidence is hearsay, arguing that it falls within an exception to the hearsay rule for admissions against interest. PFR File, Tab 3

at 10-14 (citing Federal Rule of Evidence 801(d)(2)). In support of its argument, the agency cites *Social Security Administration v. Whittlesey*, in which the Board found that an agency proved an employee was engaged in the unapproved outside practice of law through documents he submitted to a state agency before which he practiced. *Whittlesey*, 59 M.S.P.R. 684, 692 (1993), *aff'd per curiam*, 39 F.3d 1197 (Fed. Cir. 1994) (Table); PFR File, Tab 3 at 13. The Board found that these documents were not hearsay because they contained admissions. *Whittlesey*, 59 M.S.P.R. at 692.

¶17    However, we find it unnecessary to determine whether the evidence would more properly have been considered by the administrative judge as non-hearsay evidence. Regardless of how the GHIN evidence is characterized, we agree with the administrative judge that it had limited probative weight because the appellant did not necessarily enter data on the website on the same date that he golfed. ID at 6-7. We agree with the administrative judge that this evidence, at most, indicates that the appellant played golf on a particular day, and does not purport to indicate what time of day he did so or whether it was during his duty hours. ID at 6. Specifically, the columns on the GHIN website include the date of a particular game, but not the time that the game was played, and the only time reflected in the database is the time that the user updated the record. IAF, Tab 10 at 124. Thus, as the administrative judge aptly pointed out, although GHIN reflects that the appellant played golf on June 10, 2012, there is no information in GHIN as to what time he played that day; GHIN merely shows that the appellant updated the record on June 14, 2012, at 10:55 p.m. *Id.*; ID at 6-7.

¶18    The agency also argues that it did not need to establish that the appellant played golf at any specific time, only that it was more likely than not true that he was not engaged in the performance of official duties during all his work hours. PFR File, Tab 3 at 15 (citing *Minyard v. Department of Health & Human Services*, 21 M.S.P.R. 229, 230-31 (1984)). Although the cases bear significant similarities, both involving an anonymous tip that an employee was playing golf

during duty hours, we do not agree with the agency that the administrative judge misconstrued the charge. Rather, she correctly found that the agency's proof was insufficient. The proof offered in the instant matter pales in comparison to the strong case built by the agency in *Minyard*, which included testimony from the golf professional at the course where the appellant in that case allegedly played, sign-in logs for each of the games, and affidavits from two of that appellant's frequent golf partners. *Minyard*, 21 M.S.P.R. at 230-31.

¶19        The agency's evidence in this case is not of the same weight and contains almost no corroboration for the agency's allegations, supporting only 3 out of 168 specifications in the first charge with a first-hand observation of the appellant at a golf course during his alleged duty hours. ID at 8. Thus, as noted above, the agency failed to establish that it was more likely than not that the appellant provided false information regarding his official time and attendance records.

<u>The administrative judge properly sustained the second charge of providing misleading information.</u>

¶20        In his cross petition for review, the appellant contends that the agency failed to prove the second charge, providing misleading information regarding his official time and attendance records. PFR File, Tab 5 at 16-18. He argues that the administrative judge erred in finding that he had knowledge of the agency's rules for sick leave because she improperly placed the burden on him instead of the agency. *Id.* at 17. The appellant also argues that the administrative judge erred in finding that he was deceptive by claiming sick leave for the same days he played golf. *Id.* at 18.

¶21        In her initial decision, the administrative judge painstakingly reviewed the agency's evidence on each specification, finding that the agency established that the appellant took 8 hours of sick leave and played golf during the work day on 8 out of the 29 dates it specified he had done so. ID at 14-19. The administrative judge did not sustain the specification for the remaining 21 dates. She found that although the appellant had taken up to 4 hours of sick leave (or, in one instance,

administrative leave) and had reported on GHIN that he had golfed on that particular date, the GHIN data did not establish that he golfed during hours he was taking sick leave. ID at 15-17. As noted above, the administrative judge found it was not unlikely under the circumstances that the appellant attended a medical appointment and then played golf later in the day. ID at 15-16.

¶22    The appellant does not dispute that he golfed on the 8 days which the administrative judge found he had taken a full work day of sick leave. He instead argues that the agency failed to prove that he knew or should have known "that using paid sick leave for self-treating a poor disposition excluded the game of golf and was prohibited." PFR File, Tab 5 at 18. The administrative judge considered and rejected the appellant's contention that he was not aware that such use of sick leave was proscribed. As noted above, based on the testimony before her, which included the appellant's explanation of his justification for golfing while on sick leave, the administrative judge found that the appellant "knew or should have known that paid sick leave was for illness or medical treatment, not for engaging in a recreational activity or sport such as golfing." ID at 18-19; Tr. 2 at 68-73 (testimony of the appellant). As noted above, the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on witness demeanor, and may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe*, 288 F.3d at 1301. The appellant's assertions here provide no such basis for disturbing the initial decision. *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility); *see Gray v. U.S. Postal Service*, No. 05-3074, 2005 WL 1368093, at *3 (Fed. Cir. June 9, 2005) (finding that an administrative judge did not err in

concluding that an employee with 9 years of service had knowledge that working another job while on sick leave was against the rules).[4]

Removal is a reasonable penalty for the sustained charge.

¶23    Because the agency did not prove one of its charges, the administrative judge reweighed some of the penalty factors. ID at 23-25; *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (providing a nonexhaustive list of factors relevant to penalty determinations). She found the deciding official gave insufficient mitigating weight to the appellant's expressions of remorse and rehabilitative potential, as well as his 9 years of discipline-free service. *Compare* ID at 24-25, *with* IAF, Tab 7 at 32-33. On review, the agency disagrees with the administrative judge's assessment of these factors and reasserts that removal is an appropriate penalty for the two charges. PFR File, Tab 3 at 22-24. The appellant argues that, because the administrative judge did not sustain the first charge, she properly mitigated the penalty. PFR File, Tab 5 at 14-16. While we have agreed with the administrative judge that the agency proved only one of its charges, we find that she erred in reweighing some of the *Douglas* factors on this basis. We sustain the appellant's removal.

¶24    The Board will review an agency imposed penalty only to determine if the agency conscientiously considered all the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Douglas*, 5 M.S.P.R. at 306. The Board will give due weight to the agency's primary discretion in matters of employee discipline and efficiency, recognizing that the Board's function is not to displace management responsibility but to assure that managerial judgment has been properly exercised. *Id.* at 302. When the Board sustains fewer than all of the agency's charges, and the agency either indicates that it would have imposed the same penalty based on the sustained charges,

---

[4] The Board may rely on unpublished decisions of the U.S. Court of Appeals for the Federal Circuit if it finds the court's reasoning persuasive, as we do here. *See, e.g.*, *Mauldin v. U.S. Postal Service*, 115 M.S.P.R. 513, ¶ 12 (2011).

or does not indicate to the contrary, the Board's role is not to independently determine the penalty, but to decide whether the agency's choice of penalty is appropriate. *Negron v. Department of Justice*, 95 M.S.P.R. 561, ¶ 32 (2004) (citing *Lachance v. Devall*, 178 F.3d 1246, 1258-59 (Fed. Cir. 1999)); *see Blank v. Department of the Army*, 85 M.S.P.R. 443, ¶ 9 (2000) (explaining that when not all of the agency's charges are sustained and the agency has not indicated it desires a lesser penalty under this eventuality, the Board may presume that the agency desires the maximum reasonable penalty and must examine whether the agency-imposed penalty is within the maximum limits of reasonableness), *aff'd*, 247 F.3d 1225 (Fed. Cir. 2001). The Board cannot "substitute its will" for that of the agency, which is entrusted with managing its workforce. *Negron*, 95 M.S.P.R. 561, ¶ 32 (quoting *Lachance*, 178 F.3d at 1258). Rather, the Board "may mitigate an unreasonably severe agency penalty to bring the penalty within the bounds of reasonableness." *Id.* (quoting *Lachance*, 178 F.3d at 1258).

¶25    In the instant case, the deciding official stated in his decision letter that removal was an appropriate penalty for each charge independently. IAF, Tab 7 at 31-32. Without acknowledging this statement, the administrative judge reweighed the penalty, determining it was appropriate to mitigate to a 30-day suspension based on the appellant's expressions of remorse and rehabilitative potential, 9 years of service, and lack of prior discipline. ID at 24-25. In light of the deciding official's determination that removal was the appropriate penalty for either charge, we find the administrative judge erred in revisiting his penalty assessment on the basis that the agency only proved one of its two charges.

¶26    We also disagree with the administrative judge's assessment of the appellant's rehabilitative potential. The administrative judge found the appellant was remorseful, acknowledged that he made mistakes in his time and attendance practices, and complied with all time and attendance requirements after his first interview with the TIGTA investigator. ID at 24. She also considered that the majority of the proven misconduct occurred 4 years or more before the

appellant's removal. *Id.* We discern no basis to disturb the administrative judge's credibility determination that the appellant expressed sincere remorse for some of his conduct. *See Purifoy v. Department of Veterans Affairs*, [838 F.3d 1367](#), 1372-73 (Fed. Cir. 2016) (holding that an administrative judge's finding of rehabilitative potential is entitled to special deference when it is based explicitly or implicitly on witness demeanor).

¶27      Nevertheless, we find that the administrative judge failed to consider all of the relevant evidence in concluding that the appellant could be rehabilitated, and therefore this finding is not entitled to deference. *See Faucher v. Department of the Air Force*, [96 M.S.P.R. 203](#), ¶ 8 (2004) (recognizing that the Board does not owe deference to the administrative judge's credibility determination when his findings are incomplete, inconsistent with the weight of the evidence, and do not reflect the record as a whole). First, the administrative judge did not consider that the appellant only admitted to his "timekeeping errors" after being confronted about them by the TIGTA Special Agent. This warrants a reduction in the weight accorded this factor. *See Saiz v. Department of the Navy*, [122 M.S.P.R. 521](#), ¶ 13 (2015) (giving reduced weight to the appellant's expressions of remorse because he made them only after his misconduct was discovered); *Singletary v. Department of the Air Force*, [94 M.S.P.R. 553](#), ¶ 15 (2003) (explaining that the timing of expressions of remorse is relevant in assessing rehabilitative potential), *aff'd per curiam*, 104 F. App'x 155 (Fed. Cir. 2004). Second, the appellant's admissions only concerned the unproven misconduct set forth in the falsification charge. The appellant has never owned up to his misuse of sick leave or expressed any remorse for his lack of candor in the matter. In fact, the appellant has maintained throughout the agency's predecisional process and these Board proceedings, including on petition for review, that playing golf in order to relax and destress is an appropriate use of sick leave. IAF, Tab 1 at 14-15, Tab 10 at 5, Tab 12 at 128, Tab 24 at 5; Tr. 2

at 72-73, 83-84 (testimony of the appellant); PFR File, Tab 5 at 18. We find that the appellant's rehabilitative potential is at best, entitled to minimal weight.

¶28     Acknowledging the existence of some mitigating factors in this appeal, such as the appellant's 9 years of service and consistently above-average performance, we conclude that removal is within the tolerable limits of reasonableness for his sustained misconduct. IAF, Tab 13 at 8-39; Hearing Transcript, October 1, 2015 (Tr. 1) at 44 (testimony of the appellant's former supervisor), 204 (testimony of the deciding official). The nature and seriousness of the offense and its relationship to the appellant's duties, position, and responsibilities is the primary factor that the Board will consider in assessing an agency's penalty determination. *See Arena v. U.S. Postal Service*, 121 M.S.P.R. 125, ¶ 6 (2014), *aff'd per curiam*, 617 F. App'x 996 (Fed. Cir. 2015). As explained above, the agency proved 8 of the 29 specifications of providing misleading information because, on the dates in question, the appellant took sick leave when he was neither seeking medical treatment nor medically incapacitated from work but was playing golf instead, and in so doing he knowingly provided inaccurate information on his time and attendance records. IAF, Tab 9 at 133-36; ID at 15 19. The deciding official considered this factor as aggravating, stating that the appellant's misconduct was severe and egregious. IAF, Tab 7 at 32; Tr. 1 at 201-02, 240 (testimony of the deciding official). We agree. Lack of candor is a serious offense that strikes at the heart of the employer-employee relationship. *Ludlum v. Department of Justice*, 87 M.S.P.R. 56, ¶¶ 28-29 (2000), *aff'd*, 278 F.3d 1280 (Fed. Cir. 2002).

¶29     This is particularly so considering the nature of the appellant's position. As the deciding official observed, the appellant often worked remotely, and he was in a position of public trust that required him to have contact with the public. IAF, Tab 7 at 32; Tr. 1 at 203, 211 (testimony of the deciding official). This lack of on-site supervision required that the agency be able to trust the appellant on time and attendance matters. ID at 24; *see Corbett v. Department of*

*the Treasury*, 21 M.S.P.R. 544, 545-46 & n.2 (1984) (finding that removal was reasonable for an IRS employee who engaged in outside employment and falsified an official statement, notwithstanding his above-average performance, lack of prior discipline, and the allegedly mitigating circumstances surrounding his misconduct, because his position necessitated honesty and integrity and required him to work without continuous supervision).   It is clear from the deciding official's testimony that his loss of trust and confidence in the appellant played a major role in his decision.  IAF, Tab 7 at 32-33; Tr. 1 at 203-05, 210-12, 219 (testimony of the deciding official).  Considering the facts of this case, including the nature of the appellant's offense, his position within the IRS, and his continued attempts to justify his misuse of sick leave, the deciding official's loss of trust is an aggravating factor.  *See Casteel v. Department of the Treasury*, 97 M.S.P.R. 521, ¶¶ 2, 8-10 (2004) (finding that removal was a reasonable penalty for a IRS Tax Examining Assistant with 22 years of service and acceptable performance because, as relevant here, her failure to pay her Government credit card bill on time and false claim of no prior instances of outstanding balances caused the agency to lose trust and confidence in her).

¶30        Further, as the administrative judge acknowledged, and the agency reasserts on review, removal is within the range of penalties in IRS's Guide to Penalty Determinations for a first offense of making misleading statements.  IAF, Tab 14 at 81; ID at 25 n.11; PFR File, Tab 3 at 24.  To the extent that the administrative judge found mitigation appropriate because lesser penalties were available, we disagree.  ID at 25 n.11.  The Guide states that "[p]ersons in positions of trust, or who deal directly with taxpayers, can be held to higher standards."  IAF, Tab 14 at 71; *see Southers v. Veterans Administration*, 36 M.S.P.R. 213, 214-15 (finding that the penalty of removal was appropriate for charges of intentional falsification and false testimony, relying in part on the deciding official's testimony that trust was particularly important because the appellant's position required that he work independently and meet with the public when performing

his duties), *aff'd per curiam*, 862 F.2d 321 (Fed. Cir. 1988) (Table).  The appellant is employed by an agency that must maintain public confidence in its image of integrity, depending as it does essentially on voluntary compliance of the public.  *See Fike v. Internal Revenue Service*, 10 M.S.P.R. 113, 116 (1982); *see also Acree v. Department of the Treasury*, 80 M.S.P.R. 73, ¶ 19 (1998) (considering fact that the appellant's actions undermined public confidence in an agency in affirming the penalty of removal), *aff'd per curiam*, 215 F.3d 1347 (Fed. Cir. 1999) (Table).  As the deciding observed, the appellant's misconduct came to light through an anonymous source, and if the media found out, they would have a "field day."  Tr. 1 at 207 (testimony of the deciding official).  We agree with the administrative judge that the deciding official properly considered this potential notoriety as a valid concern, especially for a politically sensitive organization like the IRS.  ID at 23-24.

¶31        Although not addressed by the administrative judge or the parties on review, we also find that the deciding official appropriately considered alternative sanctions.  *See Douglas*, 5 M.S.P.R. at 306.  The deciding official testified that he considered suspending the appellant and reassigning him out of Hawaii, but because all field employees encumber positions of trust, he decided against that course of action.  Tr. 1 at 205, 211-12 (testimony of the deciding official).

¶32        Having carefully considered the evidence and weighed the pertinent *Douglas* factors as a whole, we discern no basis to disturb the determination of the deciding official that removal is a reasonable penalty for the sustained charges and specifications.  Although the appellant has 9 years of good performance and demonstrated remorse, we find that these factors are outweighed by the nature and seriousness of his offense as it relates to his position, duties,

and responsibilities, particularly considering his employment by the IRS and the level of trust that is required for a Senior Appraiser.[5]

<u>The Board currently has no jurisdiction over the agency's debt collection action.</u>

¶33    As noted above, following the hearing, the appellant filed motions regarding the agency's efforts to offset his retirement benefits to collect debts totaling $33,105.83, including fees, interest, and penalties.  RAF, Tabs 13, 17.  In his cross petition for review, the appellant argues that the administrative judge abused her discretion by not addressing the debt issue, contending it was ripe for adjudication.  PFR File, Tab 5 at 18-23.  He asserts that the administrative judge erred in failing to ensure that the agency afforded him due process in conjunction with the alleged debt.  *Id.* at 22.  Although the agency argues that the debt is "not integral to the issues regarding the appeal," it appears that a portion of the debt may relate to the appellant's use of sick leave at issue in his removal.  PFR File, Tab 7 at 8, 11.

¶34    Regardless of whether the debt is related to the use of sick leave underlying the removal, the Board is without authority to order cancelation or amendment of the debt in this appeal.  *Mattern v. Department of the Treasury*, 88 M.S.P.R. 65, ¶¶ 3-4, 11, 14-15 (2001) (finding that the Board could not award either back pay or status quo ante relief for the appellant's placement on restricted leave or administrative leave, even though these actions were related to his subsequent removal, which the Board reversed), *aff'd*, 291 F.3d 1366 (Fed. Cir. 2002).  If the appellant believes that the debt itself amounts to a suspension of more than 14 days, or a furlough of 30 days or less, he may wish to file a separate Board appeal of any such alleged adverse action.  5 U.S.C. § 7512(2), (5); *see Engler v. Department of the Army*, 121 M.S.P.R. 547, ¶ 6 (2014) (explaining that a

---

[5] Even if the Board had mitigated the appellant's removal and the appellant had been entitled to back pay, any back pay amount would need to be offset by his retirement annuity.  *See Crazy Thunder-Collier v. Department of the Interior*, 115 M.S.P.R. 82, ¶ 11 (2010); 5 C.F.R. § 550.805(e)(2)(i).

suspension is temporarily placing an employee in a nonpay, nonduty status); *Harris v. U.S. Postal Service*, 119 M.S.P.R. 583, ¶ 8 (2013) (explaining that a furlough is temporarily placing an employee in a nonduty, nonpay status because of lack of work or funds or for other nondisciplinary reasons).  We lack sufficient information to determine whether the Board would have jurisdiction over such a claim.

¶35        In addition, if the Office of Personnel Management (OPM) attempts to collect the alleged debt through administrative offset of the appellant's retirement annuity payments, the Board may have authority to conduct a limited review. *See Ramirez v. Department of the Army*, 86 M.S.P.R. 211, ¶¶ 6, 8-11 (2000) (explaining that, in the context of an OPM offset, the Board can review whether an appellant's former employing agency afforded him a hearing in connection with a debt, but not whether he is liable); *see also Fagone v. Office of Personnel Management*, 85 M.S.P.R. 49, ¶ 9 (2000) (the Board generally lacks jurisdiction over an appeal of an OPM action absent a final decision or evidence that OPM does not intend to issue such a decision).   The appellant alleges that the Department of Treasury has suggested his retirement benefits may be offset by his debt.  IAF, Tab 17 at 5; PFR File, Tab 5 at 22.  However, he does not allege that the agency has actually sought to do so and he has not provided copies of the relevant correspondence or indicated that OPM has initiated such offsets.

¶36        Accordingly, the administrative judge properly denied his motions seeking to stop collection.

## NOTICE OF APPEAL RIGHTS[6]

This is the final decision of the Merit Systems Protection Board in this appeal.  5 C.F.R. § 1201.113(c).  You may obtain review of this final decision.

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular

relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court

of appeals of competent jurisdiction.[7]   The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. <u>5 U.S.C. § 7703</u>(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

/s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.